UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TOMMY RAY BRYANT,

       Petitioner,

v.                    Case No: 2:13-cv-756-FtM-29CM

SECRETARY,         FLORIDA
DEPARTMENT  OF  CORRECTIONS
and ATTORNEY GENERAL, STATE
OF FLORIDA,

       Respondents.[1]

_____

**OPINION AND ORDER**

    This matter comes before the Court on an amended petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Tommy Ray Bryant ("Petitioner"), a prisoner of the Florida Department of Corrections (Doc. 20, filed December 30, 2013). Petitioner, proceeding *pro se*, attacks the convictions and sentences entered against him by the Twentieth Judicial Circuit Court in Collier County, Florida for attempted sexual battery of a child less than twelve years old and resisting an officer with violence. Id.

_____

    [1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004) (citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

Respondent filed a response to the amended petition (Doc. 26). Petitioner filed a reply (Doc. 29). The matter is now ripe for review.

Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be dismissed or denied. Because the petition is resolved on the record, an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   Background and Procedural History

On September 7, 2005, the state charged Petitioner by information with two counts of capital sexual battery on a child less than twelve years old and one count of resisting an officer with violence (Ex. 7).[2]  On October 9, 2007, Petitioner entered into a negotiated plea agreement with the state in which an amended information was filed in open court charging Petitioner with attempted sexual battery on a child less than twelve years old (Count One) and resisting an officer with violence (Count Two)(Ex. 8).  Per the plea agreement, Petitioner was sentenced to eighteen years in prison as a habitual felony offender to be followed by four years of sex offender probation on the sexual battery charge

---

[2] Unless otherwise indicated, citations to exhibits are to those filed by Respondent on May 27, 2014 (Doc. 28).

(Ex. 9).   Petitioner was sentenced to a concurrent term of five years in prison on the resisting arrest with violence charge. Id. Petitioner was also declared a sexual predator. Id.   Petitioner did not file a direct appeal.

On November 7, 2007, Petitioner filed his first motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") (Ex. 11).   The motion was dismissed as facially insufficient (Ex. 12).

On January 22, 2008, Petitioner filed a state petition for writ of habeas corpus in the Florida Supreme Court (Ex. 13).   The Florida Supreme Court construed the petition as a motion to correct an illegal sentence filed pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure and transferred the petition to the circuit court (Ex. 14).   On March 12, 2008, Petitioner filed a separate Rule 3.800(a) motion to correct illegal sentence in the circuit court (Ex. 15).   The resulting consolidated motion was denied (Ex. 18).   Although Petitioner filed a timely notice of appeal, he subsequently filed a motion for voluntary dismissal (Ex. 19).

On January 12, 2009, Petitioner filed a second Rule 3.850 motion claiming that his speedy trial rights were violated in the trial court and that his designation as a habitual felony offender was illegal (Ex. 20).   He subsequently filed an amended motion asserting claims of ineffective assistance of counsel based on

these same grounds (Ex. 21).   The post-conviction court denied relief (Ex. 26).   Florida's Second District Court of Appeal affirmed without an opinion (Ex. 27); Bryant v. State, 80 So. 3d 1028 (Fla. 2d DCA 2012).

Petitioner filed a third Rule 3.850 motion on March 24, 2011 raising a claim of newly discovered evidence (Ex. 29).   He attached sworn statements from the victim, the victim's mother, Petitioner's son, and Petitioner's mother asserting his innocence. Id.   He subsequently filed an amended motion (Ex. 33).   On May 23, 2012, the post-conviction court denied both motions (Ex. 35). Florida's Second District Court of Appeal affirmed without an opinion (Ex. 37); Bryant v. State, 109 So. 3d 792 (Fla. 2d DCA 2013).

On July 5, 2012, Petitioner filed a third Rule 3.800(a) motion to correct an illegal sentence (Ex. 38).   The motion was dismissed as successive (Ex. 39).   Florida's Second District Court of Appeal affirmed (Ex. 41).

Petitioner filed a federal habeas petition in this Court on October 1, 2013 (Doc. 1).   He filed the present amended petition on December 26, 2013 (Doc. 26).

## II.  Legal Standards

### A.   The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362,

412 (2000)).  That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case.  White, 134 S. Ct. at 1706 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable

manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented

in the state-court proceeding") (dictum); Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013) (same).

## B.   Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id.  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 563 U.S. 170 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689.  Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as

of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In order to satisfy Strickland's prejudice prong in the context of a guilty plea, Petitioner must show that there is a reasonable probability that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

### C.   Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner

"fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)).  The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law.  Coleman, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same

claim in federal court. <u>Alderman v. Zant</u>, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. <u>Spencer v. Sec'y, Dep't of Corr.</u>, 609 F.3d 1170, 1179-80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." <u>Wright v. Hopper</u>, 169 F.3d 695, 703 (11th Cir. 1999); <u>Murray v. Carrier</u>, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. <u>Crawford v. Head</u>, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" <u>Murray v. Carrier</u>, 477 U.S. 478, 479-80 (1986). Actual innocence means factual innocence, not legal insufficiency. <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995). "To be credible, a claim of actual innocence

must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

### III. Analysis

Petitioner raises four claims in his amended petition. He asserts that: (1) the eighteen-year sentence he received was illegal because the maximum sentence for a second degree felony was fifteen years in prison; (2) his defense attorneys were ineffective for not properly asserting his speedy trial rights; (3) the victim filed an affidavit recanting her claims against him; and (4) the state withheld an exculpatory report proving his innocence (Doc. 20 at 4-9). Petitioner also urges that trial counsel ("Counsel") was ineffective for failing to discover the withheld exculpatory report (Doc. 29 at 10-11). Each claim will be addressed separately.

### A.   Claim One

Petitioner claims that he received an illegal sentence (Doc. 20 at 4). Specifically, he asserts that Counsel was ineffective during plea negotiations for allowing the trial court to sentence him to eighteen years in prison and four years of sex offender probation on the attempted sexual battery charge when the statutory maximum sentence for a second degree felony is only fifteen years in prison. Id. He asserts that the probationary period was illegal because his conviction falls "under Fla. Stat. 777." Id. He also

urges that Counsel should have corrected his sentencing score sheet because no sexual contact points should have been assessed. Id. Finally, Petitioner claims that he should not have been sentenced as a habitual felony offender. Id.

Petitioner raised his claims of trial court sentencing error through three Rule 3.800(a) motions (Ex. 13; Ex. 15; Ex. 39).  The sentencing court denied each point raised in the first two motions[3] in a written order:

> It appears that the Defendant is claiming in his motions that his charges of attempted sexual battery fall under Florida Statute Chapter 777, and therefore, his sentence and designation as a sexual predator in the above referenced case exceeds the statutory maximum for a second degree felony, that he does not qualify as a habitual felony offender, and that his scoresheet was calculated incorrectly.

> The record indicates that the Defendant was originally charged with two counts of Capital Sexual Battery, punishable by life imprisonment, and one count of Resisting Arrest with Violence, punishable by up to five years' imprisonment.  The Defendant was adjudicated guilty on October 9, 2007 pursuant to a negotiated plea agreement, for one count of Attempted Capital Sexual Battery in violation of Fla. Stat. § 794.011(2)(a) and one count of Resisting Arrest with Violence in violation of Fla. Stat. § 843.01.   In

---

[3] The third motion, filed after the conclusion of Petitioner's other sentencing claims, was dismissed as successive (Ex. 40). Florida's Second District Court of Appeal affirmed (Ex. 41).  A state court's adequate and independent finding of procedural default will bar federal habeas review of a claim unless the habeas petitioner can show cause for the default and "prejudice attributable thereto." Murray v. Carrier, 477 U.S. 478, 485 (1986).

addition, the Defendant was found to be a habitual felony offender and designated a sexual predator.  The Defendant was sentenced to 18 years imprisonment followed by 4 years sex offender probation for count one, and five years' imprisonment on count two to be served concurrently.

Pursuant to Fla. Stat. § 777.04(4)(b), if the offense attempted is a capital felony, the offense of criminal attempt is a first degree felony punishable by up to 30 years imprisonment.

The record is inconclusive as to whether the Defendant qualified to be sentenced as a habitual felony offender.  If qualified as such, he could have received an enhanced sentence of life imprisonment on the offense of Attempted Capital Sexual Battery and ten years imprisonment on the offense of Resisting Arrest with Violence.  Fla. Stat. § 775.084(4)(a). However, even if the Defendant should not have been qualified as a habitual felony offender, his sentence did not exceed the maximum authorized for Attempted Capital Battery (first degree felony) and for Resisting Arrest with Violence (third degree felony), and any error in that regard is harmless.

Accordingly, because the Defendant's total incarceration period and probationary period of 22 years is less than the maximum authorized sentence the Defendant has failed to demonstrate an entitlement to the relief requested.

The Defendant also asserts that his scoresheet was calculated incorrectly, assessing him victim injury points.  First, it appears from the record that the Defendant did not object to the scoresheet at any time, including the sentencing hearing.  Second, the victim injury points were assessed for sexual contact not sexual penetration.  The record clearly demonstrates that the Defendant had actual sexual contact with the victim.  As stated in

the probable cause affidavit, according to the eye witness:

> "the male suspect was kissing the victim on the face, neck, and mouth while holding her in his arms.  The male put the victim onto a towel that he placed on the ground.  He was touching her vagina with his hand.  The victim's panties were down around her calves and her skirt was hiked up to her waist . . . The witness saw the male place his face in the area of the victim's vagina while her panties were still down around her calves . . . he appeared to be performing oral sex on the victim."

> The record clearly refutes the Defendant's claims.

(Ex. 18 at 1-3) (enumeration and citations to the record omitted). Petitioner did not appeal the trial court's denial of this claim. See Exhibit 19.  Accordingly, Petitioner's claims of trial court sentencing error are unexhausted.

A petitioner cannot satisfy the exhaustion requirement of 28 U.S.C. § 2254(c) if, with certain exceptions that are not applicable in this case, he failed to avail himself of "any available procedure" by which he has the right to raise his claim in state court. See Baker v. Sec'y, Fla. Dep't of Corr., 634 F. App'x 689, 693 (11th Cir. 2015) (finding claim unexhausted because the petitioner "abandoned it on appeal and, thus, did not raise the claim throughout one round of Florida's established appellate review process") (citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)).  Absent an exception to the procedural default bar (which

Petitioner does not urge), the sentencing error claims raised in Claim One are barred from review by this Court because Petitioner did not appeal the trial court's order denying them.

Likewise, Petitioner admits that he did not exhaust his ineffective assistance claims on these issues in the state courts, but urges that his failure to do so is excused by the Supreme Court's decision in Martinez v. Ryan (Doc. 29 at 4).  In Martinez v. Ryan, 132 S. Ct. 1309 (2012) the United State Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Id. at 1320.  Under Martinez, a petitioner must still establish that his underlying ineffective assistance claim is "substantial" -- that is, that it has "some merit" before the procedural default can be excused.  Martinez, 132 S. Ct. at 1318-19.  Upon review of the record, the Court finds that Claim One's ineffective assistance claims are unexhausted because they are not "substantial" and do not fall within Martinez' equitable exception to the procedural bar.

Petitioner urges that Counsel was ineffective for not arguing for a lower sentence because "the statutory maximum for a second

degree felony was fifteen years" (Doc. 20 at 4). The statutory maximum prison sentence for a second degree felony is irrelevant; Petitioner pleaded no contest to, and was adjudicated guilty of, attempted sexual battery on a victim less than twelve years old under Florida Statute § 794.011(2)(a) which is a first degree felony subject to a thirty-year maximum sentence (Ex. 9). Petitioner was well aware of the nature of the crime to which he was pleading; it was explained to him by the state prosecutor during his plea colloquy:

> STATE.  Can you please – your understanding you've been charged in the second amended information with attempted capital sexual battery, a first degree felony punishable by up to thirty years' incarceration and resisting arrest with violence, a third degree felony punishable up to five years' incarceration. It's my understanding you wish to change your plea to these – how do you wish to plea to these charges?

> PETITIONER.  No contest.

> STATE.  Okay. You understand that that's the maximum sentence on both of these cases. With the plea agreement that we've worked out in this case is that you're going to receive eighteen years in Florida State Prison with credit for time served followed by four years sex offender probation. Is that your understanding of the plea agreement?

> PETITIONER.  Yes, sir.

> STATE.  Alright.

| | |
|---|---|
| COURT: | And then the maximum penalties would be? |
| STATE. | Thirty – under the second – under the second amended information it would be thirty followed by five. Under the amended information, which we would have gone to trial if there was a trial, it would be potentially two life sentences plus five years. |
| COURT. | Alright. |
| STATE. | This – the second amended information's based upon plea negotiations. |
| COUNSEL. | We concur with that analysis, Your Honor. |
| COURT. | And do you understand that, Mr. Bryant, those maximums of the State – just told – informed you about? Okay. |
| COUNSEL. | Okay. |

(Ex. 8 at 12-14). The trial court further explained to Petitioner that, with his habitual felony offender (HVO) enhancement, he faced sixty years, possibly life, in prison if convicted at trial. Id. at 36-37. The trial court carefully reviewed each right Petitioner waived by pleading guilty before the plea was accepted, and Petitioner affirmed his understanding of the consequences of the plea. Id. at 32-34. Petitioner told the Court that he believed the plea to be in his own, and in his family's, best interests. Id. at 34. Petitioner also signed a plea agreement in which he affirmed his understanding of the nature of charges against him

and the sentences to which he was subject (Ex. 35 at 9).
Thereafter, the trial court accepted Petitioner's "plea of no
contest to both counts in the amended – second amended information,
case number 05-2647, Count I, attempted sexual battery of a child
less than twelve years of age, a first degree felony, and Count
II, resisting an officer with violence, a third degree felony."
Id. at 41.  "[R]epresentations of the defendant . . . [at a plea
proceeding] as well as any findings made by the judge accepting
the pleas, constitute a formidable barrier in any subsequent
collateral proceedings. Solemn declarations in open court carry a
strong presumption of verity," Blackledge v. Allison, 431 U.S. 63,
73-74 (1977).

Because Petitioner was charged with, and pleaded no contest
to, a first degree felony, Counsel had no reason to argue that a
second degree felony carried a fifteen-year maximum sentence.
Therefore, reasonable competent trial counsel would have decided
against making such an argument, and Petitioner has not
demonstrated deficient performance.  Provenzano v. Singletary, 148
F.3d 1327, 1332 (11th Cir. 1998) (noting that counsel's conduct is
unreasonable only if petitioner shows "that no competent counsel
would have made such a choice").

As to Petitioner's argument that Counsel should have objected
to the assessment of "contact points," the claim is equally
unavailing. Two witnesses observed Petitioner's interaction with

the minor victim in this case.   Witness Carol Taylor provided a sworn statement to the investigating detective in which she described Petitioner's contact with the victim (Ex. 5).   She told the detective that she was alerted to Petitioner's presence when her dog began barking, and she saw Petitioner kissing a little girl. Id. at 2.   She believed it did not look right, so she called police. Id.   In a sworn statement, the detective questioned Taylor about Petitioner's interactions with the child:

> Q.   Okay.  And did it appear to you, did he ever take any clothes off of her?  Did he ever undress her?
>
> A.   All he, all he, he had her I could see her, she had little white panties on and they were all curled down below her, below her knees like he had pulled her panties down below her knees and at one time he stood her up and I, and that's the only time I'd seen her bare butt.  I didn't see the front of her but I saw her bare butt when his pant [sic], when he stood her up that one time just before he sat her on his knee.  When he sat her on the knee then I could see she still had her panties down below her knees.  She had her panties below her knees until the officers got there and that's when he finally pulled the panties up but the whole time her panties were down.
>
> Q.   Okay.  Where else did you see him kissing her?
>
> A.   On her vagina, her neck, her face and that's as far as I saw her kiss him cause I saw him go down on her.
>
> Q.   Okay and when you say go down on her?

> A.   On her vagina area.  I saw his face on
>      her vagina area.  I didn't see her vagina
>      but I saw it down there.

Id. at 2.  Taylor also testified that Petitioner appeared to be masturbating with one hand while his other hand was on the child's vagina. Id. at 6.  Witness Daniel Burton Chamberlain told the detective in a sworn statement that he observed Petitioner "rubbing the little girl's vagina" and putting "his mouth on the girl's vagina" while he (Petitioner) masturbated (Ex. 5 at 4).  Under Florida law, "contact" in the context of a sexual battery charge includes a "touching or meeting." See Roughton v. State, 185 So. 3d 1207, 1212 (Fla. 2016).  Given the graphic descriptions of Petitioner's activity with the victim, reasonable counsel could have decided against objecting to the assessment of sexual contact points.

Finally, Counsel was not ineffective for failing to object to Petitioner's designation as a habitual felony offender.  Under Florida law, a defendant may be sentenced as a habitual felony offender if he "has previously been convicted of two or more felonies in [Florida]," and the felony for which the defendant is to be sentenced occurred within five years of the defendant's release from prison. Fla. Stat. § 775.084(1).  Petitioner does not explain why he feels that he was not subject to an HVO designation. His arrest report indicates that, prior to the instant offense, he was arrested more than forty times in Collier County alone (Ex.

1).  At his plea colloquy, Petitioner was specifically asked about his prior convictions for the purposes of establishing the HVO designation:

| | |
|---|---|
| COURT. | Alright.  Case number 98-1582, it was conviction of driving while license suspended or revoked, and that was in 1998. |
| | . . . |
| PETITIONER. | Yes, ma'am. |
| COURT. | Okay.  In case number 04-250, it was conviction for burglary of an unoccupied conveyance and also two counts of petty theft, no, I'm sorry, just one count of petty theft.  And that occurred in May of 2004. |
| PETITIONER. | Yes, ma'am. |
| COURT. | Okay. |
| STATE. | And that's really the important one 'cause that's the one within the five. |
| COURT. | Right.  And then in September of 1993, conviction for uttering a forged count of grand theft in case number, I'm sorry, 93-563. |
| PETITIONER. | Yes, Ma'am. |
| COURT. | Alright.  And are you, in fact, the defendant in all three of those cases? |
| PETITIONER. | Yes, ma'am. |
| COURT. | Alright.  And do you have any proof that these convictions have been set aside by post – post conviction |

> proceedings or a pardon from the government?

PETITIONER.   No, ma'am.

COURT.        Alright.

(Ex. 8 at 29-30).   Given Petitioner's admission to the prior convictions, reasonable, competent counsel could have decided against objecting to his designation as a habitual felony offender.[4]

Because Petitioner cannot satisfy the first prong of Strickland's ineffectiveness test on any of his sentencing claims, the ineffective assistance claims raised Claim One are not "substantial" so as to excuse Petitioner's failure to exhaust them in state court.  Martinez, 132 S. Ct. at 1318-20.   Nor has Petitioner presented new, reliable evidence indicating that the actual innocence exception would apply to excuse his default of this claim.   All issues raised in Claim One are dismissed as unexhausted.

## B.   Claim Two

Petitioner asserts that Counsel was ineffective because she filed a demand for speedy trial instead of a notice of expiration of speedy trial time and motion for discharge (Doc. 20 at 6).

---

[4] To the extent Petitioner asserts that he did not receive notice of the state's intent to seek HVO status prior to his plea, the assertion is conclusively refuted by the record.  Petitioner received notice of the HVO sentence before his plea and was advised of the consequence of the sentence (Ex. 8 at 6, 21, 35, 37-40).

Petitioner raised this claim in his second Rule 3.850 motion, where it was denied by the post-conviction court:

> Defendant asserts that his rights to a speedy trial were violated when his trial counsel, who had a conflict of interest, filed several speedy trial waivers. Even if Defendant's first attorney filed several speedy trial waivers, the record reflects that the attorney who subsequently represented Defendant filed a demand for speedy trial on August 30, 2007, and Defendant's trial was scheduled to begin on October 9, 2007. Speedy trial rights under Fla. R. Crim. P. 3.191, may be waived by an attorney without consulting a defendant, or even against a defendant's wishes. Randall v. State, 938 So. 2d 542 (Fla. 1st DCA 2006); State v. Kruger, 615 So. 2d 757 (Fla. 4th DCA 1993). In addition, when Defendant entered his plea, he waived his rights to speedy trial. Sydoriak v. State, 947 So. 2d 1287, 1290 (Fla. 5th DCA 2007) ("By virtue of the entry and acceptance of appellant's nolo contendere plea, appellant waived his right to a speedy trial").

(Ex. 26 at 2). The rejection of this claim was affirmed by Florida's Second District Court of Appeal (Ex. 27). Petitioner does not explain how the state courts' rejections were contrary to Strickland or based upon an unreasonable determination of the facts. A review of the record and applicable law supports the state courts' conclusions on Claim Two.

First, to the extent Petitioner urges that his initial attorney erred by waiving speedy trial against his wishes, Petitioner does not state a claim. Petitioner has presented no argument or evidence to overcome the presumed competence of his

first attorney.  Kimmelman v. Morrison, 477 U.S. 365, 384 (1986) ("[T]he defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.").  Where, as here, "the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." Chandler v. United States, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (quoting Williams v. Head, 185 F.3d 1223, 1228 (11th Cir. 1999)).  Therefore, absent evidence to the contrary, the Court will assume that Petitioner's first trial counsel believed it necessary to extend his preparation time by waiving speedy trial.  See Strickland, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.") (internal quotation marks omitted).  A waiver of his client's statutory speedy trial rights by counsel is binding on the defendant, "even though done without consulting him and even against the client's wishes." State v. Kruger, 615 So. 2d 757, 759 (Fla. 4th DCA 1993).

Equally unavailing is Petitioner's assertion that Counsel, his second defense attorney, was ineffective for filing a demand

for speedy trial instead of a notice of expiration and motion for discharge.   Under Florida law, Counsel could not have done as Petitioner now suggests.   A trial continuance granted at the request of the accused (in this case by Petitioner's first defense attorney) constitutes a waiver of the right to a speedy trial under Rule 3.191(a) of the Florida Rules of Criminal Procedure.[5]   State v. Gibson, 783 So. 2d 1155, 1159 (Fla. 5th DCA 2001).   Once speedy trial is waived, the accused continues to have available the right to demand a speedy trial within sixty days pursuant to Rule 3.191(b) as well as his constitutional right to speedy trial guaranteed under the state and federal constitutions. Butterworth v. Fluellen, 389 So. 2d 968 (Fla. 1980).   Therefore, to the extent Petitioner sought to exercise his speedy trial rights, under Florida law, Counsel was constrained to demanding a speedy trial pursuant to Rule 3. 191(b), which is precisely what she did.

---

[5] Under Rule 3.191(a) of the Florida Rules of Criminal Procedure, a person charged with a felony must be brought to trial within 175 days of arrest. Fla. R. Crim. P. 3.191(a).   After the 175-day speedy trial period expires, a defendant may file a "Notice of Expiration of Speedy Trial Time." Fla. R. Crim. P. 3.191(p)(); State v. Nelson, 26 So. 3d 570, 574 (Fla. 2010). Within five days of filing the notice, the court must holding a hearing to determine whether any exceptions exist, which would prevent speedy trial, such as the defendant's unavailability. Fla. R. Crim. P. 3.191(p)(3); Nelson, 26 So. 3d at 574.   If no exceptions exist, the trial court must order that the defendant be brought to trial within the ten-day recapture period. Fla. R. Crim. P. 3.191(p)(3); Nelson, 26 So. 3d at 575. If the state fails to bring the defendant to trial within this period, through no fault of the defendant, he is "forever discharged from the crime." Id.

Petitioner has not shown that the performance of either of his defense attorneys was deficient for improperly asserting his speedy trial rights.  Accordingly, Petitioner has not satisfied the first prong of the Strickland ineffectiveness test.  The state courts' rejection of this claim was neither contrary to clearly established federal law nor based upon an unreasonable determination of the facts.  Claim Two is denied pursuant to 28 U.S.C. § 2254(d).

### C.    Claim Three

Petitioner claims that the victim filed an affidavit recanting her statement, and therefore, he is actually innocent of the crime to which he pleaded nolo contendere (Doc. 20 at 7). Petitioner raised this claim in his third Rule 3.850 motion, and it was denied by the post-conviction court on the ground that two other people had witnessed "the operative events of the crime for which Defendant was charged . . . and that prior to the entry of Defendant's *nolo contendere* plea, the defense knew the victim had already vacillated." (Ex. 35 at 4).  The post-conviction court's rejection of Claim Three was affirmed by Florida's Second District Court of Appeal (Ex. 37).

Petitioner does not explain how the state courts' rejection of Claim Three was contrary to clearly established federal law or based upon an unreasonable determination of the facts.  In his reply, Petitioner urges for the first time that his "fundamental

rights" were violated under United States v. Olano, 113 S. Ct. 1770 (1992)[6] because the victim's recantation proves that he is actually innocent.

Respondent argues that a claim of actual innocence based upon alleged newly discovered evidence has never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding (Doc. 26 at 16-17) (citing Herrara v. Collins, 506 U.S. 390, 400-01 (1993)). Indeed, the United States Supreme Court has recognized that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." Townsend v. Sain, 372 U.S. 293, 317 (1963), overruled on other grounds by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992), superseded by statute as stated in Williams, 529 U.S. at 433. Accordingly, Petitioner's "freestanding" claim of actual innocence warrants no federal habeas corpus relief.

---

[6] In Olano, the United States Supreme Court differentiated between the legal concepts of forfeiture and waiver. 507 U.S. 725 (1993). The Court found that if a legal rule was violated during district court proceedings and the defendant had not specifically waived the rule, there was an error within the meaning of Rule 52(b) of the Federal Rules of Criminal Procedure, even if no objection was made. Id. Olano did not apply to state court proceedings, and did not address allegations of actual innocence based upon a victim's recantation.

Even if considered on the merits, the claim must be denied. To establish actual innocence, a petitioner must show "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327.[7]  The claim must be supported by "new reliable evidence . . . that was not presented at trial." Id. at 324.   In the instant case, the victim's affidavit is not "new reliable evidence" of Petitioner's innocence.   First, as noted by the state post-conviction court, the evidence is not new because Petitioner was well aware of his five-year-old niece's vacillation before he pleaded nolo contendere to the attempted sexual battery charge. In his March 16, 2006 objection to the state's notice of intention to introduce the victim's hearsay statements, Petitioner argued that "[t]he alleged hearsay statements are contrary to information received from the child at deposition[.]" (Ex. 35 at 39).   Next, courts considering similar affidavits have rejected them as unreliable and insufficient to support a claim of actual innocence. See Arthur v. Allen, 452 F.3d 1234, 1246 (11th Cir. 2006) (11th-hour exculpatory affidavits are suspect); Bosley v. Cain, 409 F.3d 657, 665 (5th Cir. 2005) (rejecting actual innocence claim where

---

[7] In federal habeas, a claim of actual innocence merely "serves as a 'gateway' to get the federal court to consider claims that the federal court would otherwise be barred from hearing." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012).

new evidence consisted only of testimony from four relatives of the petitioner); Mize v. Hall, 532 F.3d 1184, 1197 (11th Cir. 2008) ("affidavits alone are not a promising way to demonstrate actual innocence. Though sworn, they are not convincing evidence of innocence because 'the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations.'")(quoting Herrera, 506 U.S. at 417).

Finally, Petitioner has not established that it is more likely than not that no juror would have convicted him in light of the five-year old victim's recantation.  Two adult witnesses described the behavior they observed that lead to Petitioner's arrest and plea (Ex. 5; Ex. 6).  Given the explicit details provided by these witnesses, see discussion supra Claim One and Exhibits Five and Six, Petitioner has not established that no reasonable juror would have chosen to believe them instead Petitioner's version of the events.

Petitioner has not shown that the state court's adjudication of this claim involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  Therefore, Claim Three does not warrant federal habeas corpus relief.

### D.   Claim Four

Petitioner asserts that the state attorney possessed an exculpatory laboratory report from the Florida Department of Law

Enforcement ("FDLE") prior to his October 9, 2007 plea colloquy, and had he known of the report, he would not have accepted the state's plea offer (Doc. 20 at 9).  In his reply, Petitioner adds a claim of ineffective assistance of counsel for failing to discover the FDLE test results prior to the plea colloquy (Doc. 29 at 10).[8]

To support his claim that the state prosecutor was in possession of exculpatory evidence, Petitioner attaches to his petition an August 23, 2005 crime scene report supplement stating the following:

> On Monday, August 22, 2005, a blue blanket and blue towel, that were secured and left to dry in the Drying Chamber was [sic] processed for the presence of blood and/or semen.  Both items were photographed prior to processing, in their original state.  After which, the blue towel was scanned for the presence of semen with the Omni Chrome using 450 nm band pass filter with positive results.  The towel was then photographed under fluorescent lighting and the Omni Chrome 450 nm, with and without scale.
>
> An area of suspected blood on the towel was processed with the use of a presumptive blood test, with results that were positive for the presence of blood.  In addition the areas of suspected semen were tested with presumptive

---

[8] Arguments or claims raised for the first time in a reply brief are not properly before a reviewing court. Herring v. Sec'y, Fla. Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005); United States v. Whitesell, 314 F.3d 1251, 1256 (11th Cir. 2002) (Court need not address issue raised for first time in reply brief). However, because Petitioner's Brady claim is intertwined with his Strickland claim, the Court will address the merits of the latter. See discussion infra Claim Four.

> semen tests, with positive results for the
> presence of semen.   A blood swab was then
> obtained from the towel, along with a standard
> swab of distilled water.   Three semen swabs
> were then obtained from the towel from three
> different areas, along with a standard swab.
>
> The blue blanket was scanned with the Omni
> Chrome using 450 nm band pass filter for the
> presence of semen with negative results.
>
> Disposition of Evidence:   The items were
> packaged and submitted into the CCSO
> Property/Evidence Section, along with the
> blood and semen swabs.

(Doc. 1-1 at 3).   Petitioner also attaches a September 28, 2007

FDLE report stating that swabs taken from the blue towel found at

the crime scene failed to give chemical indications for the

presence of semen or blood. Id. at 4.   It does not appear that the

blue blanket described in the crime scene report supplement was

chemically tested.   Petitioner asserts that, had he been aware of

the 2007 FDLE report, "he would not have entered a plea and would

have insisted on his right to a jury trial." (Doc. 20 at 9).

Petitioner raised this claim in his third Rule 3.850 motion

(Ex. 33).   The post-conviction court first determined that no

violation occurred under Florida law because this evidence could

have been discovered with due diligence (Ex. 35 at 5).   The Court

then denied the claim as improperly raised under Rule 3.850:

> Defendant seems to be asserting a claim of
> prosecutorial misconduct for the suppression
> of the FDLE reports.   Notably, substantive
> issues of prosecutorial misconduct are
> inappropriately raised under rule 3.850.
> Spencer v. State, 842 So. 2d 52 (Fla. 2003)

> (substantive claims of prosecutorial misconduct could and should have been raised on direct appeal and thus are procedurally barred from consideration in a postconviction motion); <u>Kijewski v. State</u>, 831 So. 2d 757 (Fla. 4th DCA 2002) (appellant's claim alleging prosecutorial misconduct is inappropriate for a rule 3.850 motion for postconviction relief). Accordingly, Ground 3 is without merit, does not qualify as newly discovered evidence, and is not cognizable in a motion for postconviction relief.

<u>Id.</u> Florida's Second District Court of Appeal affirmed (Ex. 37). A review of the record supports the state courts' rejection of Claim Four.

In <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." In order to establish a <u>Brady</u> violation, "a defendant must prove: (1) that the government possessed evidence favorable to the defense, (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence, (3) that the prosecution suppressed the evidence, and (4) that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense." <u>United States v. Schier</u>, 438 F.3d 1104, 1106 n.1 (11th Cir. 2006) (citing <u>Moon v. Head</u>, 285 F.3d 1301, 1308 (11th Cir. 2002)).

"[N]either mere speculation that the prosecution might possess information helpful to the defense nor base assertions, without more, of the presence of exculpatory information in the prosecution's files would be sufficient to warrant a <u>Brady</u> determination." <u>Brown v. United States</u>, Case No. 3:02-cr-14, 2006 WL 1582421, at *2 (M.D. Ga. June 5, 2006) (quoting 25 James Wm. Moore et al., Moore's Federal Practice § 616.06[2] (3d ed.1997)). Under these rules, Petitioner has not established that a <u>Brady</u> violation occurred.

First, the record does not support Petitioner's claim that the 2007 FDLE report was suppressed by the prosecutor or that he could not have obtained the report with due diligence. At the plea hearing, the parties discussed whether DNA evidence existed linking Petitioner to the crime:

> STATE:    Okay, [Counsel]. As defense counsel in this case, would you stipulate, for the purposes of the plea, there's a factual basis and venue lies properly – properly in Collier County?
>
> COUNSEL:  Yes, I do.
>
> STATE:    **Additionally, there – there was some DNA testing done in which there were no results and – and I think you indicated earlier that there were some other DNA testing done that we do not have results, and the understanding is he's entering this plea knowing that at the very least there is no DNA evidence linking him to the crime.**

COUNSEL:     Yeah.   If I could just be more specific - -

STATE:      Sure.

COUNSEL:     -- I would explain.   The – the police officers that took the – the DNA – in particular the CSI personnel, took swabs of Tommy's mouth, out – external area, and his hands shortly after the actual incident allegedly occurred.   They would have those, and they put 'em into storage.   They have never been tested by the FDLE.   Those would be potentially exculpatory if they came back with negative findings.   And that's why we have to make the reference that I cannot say on the record that I'm not aware of any DNA evidence that would exculp— exonerate my defendant, but I have to just tell him that he – he's aware of this and he's still entering the plea.

STATE:      Is that correct, sir?   Knowing all this, you're still entering the plea?

PETITIONER: Yes.

(Ex. 8 at 20-21) (emphasis added).   The prosecutor informed Petitioner that "there was some DNA testing done in which there were no results." Id. at 20.   This statement may well have been directed towards the September 28, 2007 FDLE report finding no "chemical indications for the presence" of semen or blood on the blue towel taken from the crime scene (Doc. 1-1 at 4).   The same report indicated that "no analysis was performed on" two standard swabs that were also submitted to the FDLE for testing.   Id.

Because the state prosecutor's statements at trial were consistent with the allegedly suppressed report, the record does not indicate that the state intentionally suppressed exculpatory evidence.

Even assuming *arguendo* that the state inadvertently suppressed the FDLE report, Petitioner cannot demonstrate resulting prejudice. To find prejudice under Brady, there must be "a reasonable probability" of a different result had the evidence been produced. Klyes v. Whitley, 514 U.S. 419, 422 (1995). The evidence linking Petitioner to the crime consisted of the statements of two eyewitnesses who described Petitioner's actions towards the victim in great detail and the victim's statement to child protective services. Neither eyewitness attested in their sworn statements that Petitioner ejaculated during his molestation of the victim, and neither attested that the victim or Petitioner was bleeding during the molestation. Therefore, the absence of blood or semen on the blue towel was not surprising—particularly given that FDLE reports from May and December of 2006 (of which Petitioner does not claim he was unware) showed negative results for semen when tests were performed on the victim's clothing and on swabs from the victim's perihymenal and labia major areas. Moreover, Counsel explained to Petitioner that some of the evidence had not yet been tested for DNA, and the state prosecutor specifically stated that "there is no DNA evidence linking [Petitioner] to the crime scene." However, Petitioner

still chose to enter his plea (Ex. 8 at 21).  Petitioner's current assertion that he would have proceeded to trial on the original information and faced life in prison had he realized that the FDLE did not find blood or semen on the blue towel is not credible, and Petitioner does not show prejudice under the standard of review applicable to Brady claims.  Accordingly, he is not entitled to federal habeas corpus relief on Claim Four.

Likewise, Petitioner cannot demonstrate Strickland prejudice from Counsel's alleged failure to "ascertain[] the DNA test results from the Florida Department of Law Enforcement." (Doc. 29 at 10). While the prejudice standard in Kyles concerned the suppression of evidence under Brady, the test for showing prejudice under Strickland and "materiality" under Brady are basically the same. See Strickland, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."); id. ("[T]he appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution."). Accordingly, the Court's conclusion that Petitioner cannot show Brady prejudice under Kyles also disposes of the ineffective assistance claim raised in Petitioner's reply.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   Certificate of Appealability[9]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El, 537 U.S. at 335-36.  Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

---

[9] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id. As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

1.   The Florida Attorney General is **DISMISSED** as a named Respondent.

2.   Claim One of the 28 U.S.C. § 2254 petition for habeas corpus relief is dismissed as unexhausted.  The remaining claims are denied on the merits.

3.   Petitioner is **DENIED** a certificate of appealability.

4.   The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___20th___ day of December, 2016.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Tommy Rae Bryant
Counsel of Record